Case number 24-1177 from North Dakota, McKenzie County, ND v. United States, et al. All right. Good morning, counsel. Ms. Blaha, you may proceed. Good morning. May it please the Court, Amber Blaha for the United States of America. I'd like to reserve four minutes for rebuttal. This case concerns McKenzie County's efforts to claim royalties on minerals that are now and always have been owned by the United States as part of the public domain. The county bases its claim to royalties on eminent domain proceedings that occurred 85 years ago. But these eminent domain proceedings were effectively a one-way street. They took the county's title, subject to certain reservations, but did not convey federal property to the county. The federal government has consistently informed the county of this fact multiple times over the last 40-plus years. I'd like to first address the All Writs Act claim, and then discuss why the county's Quiet Title Act claim is barred by the statute of limitations. Finally, although this Court does not need to reach the merits of the county's Quiet Title Act claim, I can address why the county has no right to the disputed federal mineral interests. So turning first to the All Writs Act claim, the District Court erred in granting mandamus relief under the All Writs Act for at least two reasons. First, the Supreme Court has squarely and repeatedly held that, and I quote, where a statute specifically addresses the particular issue at hand, it is that authority and not the All Writs Act that is controlling. And that's in Syngenta, Pennsylvania Bureau of Corrections, and other cases as well. That assumes, though, that the Quiet Title Act was the only remedy. Honestly, I think the two parties were talking past each other in the briefing. So I understand them to be saying this was settled decades ago, in the 80s, when it was tried in federal district court, and they said, yeah, this can be a valid conveyance. They just want collateral estoppel effect to that earlier judgment. I mean, I think that is their position. We disagree with the merits of the position, but it is our position that mandamus relief is still not appropriate. Well, but I'm going to get at that, because if they're right, let's assume that they're right about that position. So I know you have a lot of arguments to the contrary. There's nothing that allows enforcement of an earlier judgment, really, than the All Writs Act, whether it's mandamus, whether it's a writ of assistance. I don't know what the right writ is, but they're basically saying, I want to enforce this judgment that we got two or three decades ago, and I can't think of another statutory remedy that will allow them to do that. Well, I think courts have tools within the context of a particular case. Usually this should be done in a timely way to enforce specific orders for a party to do something. Rule 60, within a certain amount of time, allows for judgments to be clarified or corrected in certain circumstances. But the notion of going back to prior condemnation actions, or even Quiet Title Act suits, and taking vague language and using the All Writs Act to enforce that, I think is a violation of the Quiet Title Act. I think if you look at the cases where the Supreme Court, so this is kind of, not only has the Supreme Court said that the All Writs Act is only available when no other authority would address the issue, but has also been equally emphatic that the Quiet Title Act is the only way to address disputes with the United States about federal title. But they don't have to bring repeated Quiet Title Act claims. I mean, if they're right about their argument, you don't have to bring a Quiet Title Act claim every three or four years in order to say, oh, yeah, we really get the title. Yeah, we really get the title. Well, I think that is presuming a situation where the United States is not complying with a clear order of the court. I think that's exactly what they're saying. I think it's incorrect. I just think that's wrong. I think you can look at the, if we're talking about the 1991 judgment, I think by far the better argument, and I really don't see any merit to the idea that federal minerals were at issue in that case. Nobody acted as if federal minerals were at issue in that case. There was no reason for them to be. It has nothing to do with the North Dakota cases that brought that case up. There was no distinction either. It was just all minerals. So I think that's what they're saying, is because there was no distinction, everything. Well, I don't think that works. Certainly it does not. I don't think it works for either of the judgments that we're talking about. I definitely don't think it works for the 1991 case, because they defined what minerals were at issue. They said, here's what's in dispute. They used the word dispute. This dispute is about these subject lands, and they attached a list with specific tracks, and it doesn't include any federal minerals. That was the enclosure one, is that what we're talking about? Weren't there other tracks that were added to that subsequently? No. That is how they defined the subject lands. There's nothing in the record that the subject lands were then defined differently. All they've pointed to are sort of very ambiguous references that maybe something else was contemplated. That's actually the critical point, if you're right about that, because looking back at that earlier federal district court action, it is quite clear, like crystal clear to me, that the same arguments that are being made in this action are exactly the same as in the previous action. Maybe you're talking about different tracks of land, but the same arguments are being made in both actions. I don't agree with that. I don't think that's accurate. The 1991 action was figuring out what to do with a North Dakota law that said when the county has tax title to any property, including mineral interests, it is required to divest that title when it sells it or gives it away by deed. That has nothing to do with federal minerals. It never had title to federal minerals. That's the critical thing. It relies on that distinction. What was at issue then in the 1991 case was talking about North Dakota law. North Dakota law about the conveyance of minerals has nothing to do with the conveyance of federal minerals. It had to do with the conveyance of minerals that the county held in tax title. The issue we're talking about here, conveying federal minerals, was not at issue in McKenzie 2. Why not? As I read this judgment from 1991 and I look at the complaint, because the judgment is very short, but it refers to the complaint, and I look at the attachment and the enclosure that's attached to the complaint, I see a listing of legal descriptions of real property. Why don't those legal descriptions suffice to cover royalty interest, whatever it may be, that is royalty interest with respect to minerals that are under the lands that are described by those legal descriptions? Because the tracts that are identified as in dispute in McKenzie 2 are not the ones that have federal minerals under them. In the Venn diagram, there is no overlap. You say the legal descriptions that you describe as federal minerals, they were not covered by this 1991 judgment. Correct. And there's a declaration in the record where there's a chart and it compares them. In McKenzie 2, the subject lands involved all minerals that were acquired through the county's tax title. Those are the ones that BLM understood prior that it would pay royalties on. It was trying to figure out what to do with this North Dakota law, a Supreme Court decision that said you have to divest your tax title, and it identified the specific tracts that were at issue. Those were all ones where McKenzie County had the tax title. It did not involve any with federal minerals. You say it's the exact same issue, to get back to your point, I think the federal government at the time, if they thought federal minerals were at issue, would have brought up the points I'm making here, including the federal officials involved and really the court had no authority or jurisdiction to divest federal public domain minerals as part of that action. And that was not discussed in that case. For me, this is a very important point, because I go back to legal descriptions referred to as, in this judgment, that are referred to as disputed, I forget the term, disputed lands or something like that. For me, at least at this point, I'm thinking that the legal descriptions are the key. Not an apportionment of the minerals under those legal descriptions. It's the legal descriptions that are key here. And you're saying that the legal descriptions of what you call federal lands are not included or covered by that judgment. That's correct. Where the county defined, here's what's in dispute, the subject lands, they made an attachment, there's tracts listed, I agree with you, those tracts were addressed by McKenzie 2. We are not trying to relitigate the tracts addressed in McKenzie 2. But none of those tracts, and there's been no dispute on this point, none of the tracts identified as the subject lands are the ones that we're talking about in this case. There's only one problem with your argument, even on that, which is that the enclosure didn't list the land descriptions. I think you might be right about that. But it referenced the condemnation judgments from the 1930s that did include the lands with minerals. Well, that's true. And those condemnation judgments were relevant to the history of the tracts that were at issue. But I think it strains, honestly, belief for what courts think is before them. It also, I think, is in very serious tension with the Quiet Title Act, which requires a complaint to identify with particularity what property interests are at issue so that we're not having debates about what people meant 30, 40 years ago to say that, well, here we've identified what the actual subject lands are. But by referring in a background way to the fact that these were part of condemnation judgments, we also are sweeping in the much broader set of lands that were at issue in those condemnation judgments. And I don't believe the parties understood that. I don't believe the court understood that. There's no evidence that she did. I see I'm into my rebuttal time. Are there further questions you'd like me to answer now? Well, I'll just ask this. I've got the complaint. Paragraph 2 says this lawsuit consists of a dispute over ownership of six and a quarter royalty interests under certain lands located in McKenzie County. Said lands are described in Enclosure 1 of Exhibit A, attached here to and made apart hereup, will be herein referred to as subject lands. So that's what this earlier proceeding was about.  The lands described in that exhibit. Yes. And that exhibit consists of a decision from the Bureau of Land Management, two pages, and then attached to that are several pages with the legal description of the various tracts. Correct. And those tracts are not, do not involve Federal minerals. What's at issue here? Thank you. Counsel, you may proceed. Thank you, Your Honor. May it please the Court? I think this case goes back to a long-standing inherent authority of our courts, and that is their ability to enforce their prior judgments and their orders. And as Judge Strauss was talking about and discussing just here a little bit ago, is how we do that and how it's through the All Writs Act is the statute that gives you that authority. It gives you all writs necessary and appropriate to effectuate your court's perspective jurisdiction and to prevent parties from evading prior decisions. And I think that's exactly what has happened here. And McKenzie County interprets the prior litigation that occurred in the 1980s and the judgment that was issued in 1991. But I would like to kind of just go off of what was just being discussed and explain a little bit further that case. For the first part, the BLM decision was to void that royalty interest conveyance in the condemnation judgments from the 1930s in its entirety. It was not limited to only specific tracts. The reason that specific tracts were ever listed was because those were the tracts that were actually being leased at the moment and in which payment of royalties were being made. However, the decision to void the royalty was not limited to only those tracts. It would have applied across the board to every tract listed in the condemnation judgments that were at issue. And so I think that is a big distinction. And while the complaint from below referenced that enclosure, that was because that was the ones the BLM was notifying them that they knew they were paying and that they were now going to stop paying. And so what I think is big is that in the complaint also, the McKenzie County's prior attorney, or state's attorney, had also listed every single condemnation judgment that was applicable. And that listed every tract of land that was subject to the exact same paragraph, the exact same six and a quarter percent royalty grant. And so it's very clear what tracts of land were at issue. And not only that, in their claims and requests for relief, they were asking the court to determine that that six and a percent royalty grant was a grant to the county and that the county's interest in that grant under those condemnation judgment was superior to that of the United States and requesting the court to quiet title on that royalty interest. If we disagree with you, I just want to understand what the implications of each side's argument are. So let's say we say it's only the ones in that Exhibit 1 in the federal lawsuit, the specifically listed ones. Does North Dakota lose, or do we have to then, I mean, in the sense that we're limited to just that here in this case? If it was limited to only those listed in Enclosure 1, I would agree that it did not include the subject tracts at issue in this case. Okay. And so then we have to get to the condemnation judgments and say, are those reasonably included under the complaint and incorporate in that action? Correct. And it appears to me that it's really tough. I mean, it's because, and let me just say, if it's included only on those, then North Dakota loses because you're really looking for offensive collateral estoppel, which is normally not allowed. But if it's included, then obviously it's collateral, just straight up collaterally estopped. And so what do we do when the two parties have what I think are both reasonable arguments that those other tracts were included? Yeah. Well, I think what we can do, too, is look to the court's order itself. I know it's not the largest order. It's not the most descriptive order. But it did not limit it to subject tracts. It did not limit it to specific tracts. Instead, it said, we are quieting in the disputed minerals, which they identified as in parens, right next to it, as six and a quarter percent royalty to the county. How do you, the Quiet Title Act is pretty clear that you've got to be specific. There is the particularity requirement. And so if we assume that the district court was aware of that as well, doesn't that kind of, does that sort of weigh against North Dakota's position here to go outside of the enclosure one? I don't think it does, Your Honor, and only because, again, the condemnation judgments were specifically referenced, and not only in the complaint, but also in enclosure one. And in those, they identified all the other tracts that were subject to the same exact language. It was not like there was multiple judgments involved that weren't included, or even in our case, it is the exact same six judgments that were in front of the court previously. Those tracts of land were laid out. I don't think that would go against the Quiet Title Act's requirement for particularity. Those tracts were clearly identified. What about the federal government's position that they just couldn't do this? That the federal law would not permit the secretary to give or grant to North Dakota or McKenzie County the title to those minerals because that was public domain? On the first part of it, I would argue, one, that the government's argument is barred by issue preclusion. It's the exact same argument that was raised in the prior litigation. They claimed that there was no authority to convey any interest. All they were doing is acquiring property, and they couldn't convey anything. Outside of that, though, getting to the particulars of it, the National Industrial Recovery Act gave them the power to acquire property as well as to sell any of the security acquired or any property so constructed. But isn't that limited to acquired property? In other words, they could acquire property and then dispose of it under the act, given congressional authority to do that. But isn't that different than whether the secretary is given authority by Congress to dispose of originally held federal property? Yeah, I think there may be a little bit of distinction, but I think the Emergency Relief Appropriations Act and the Bankhead-Jones Farm Credit Act also kind of provided additional... And not kind of provided. This is federal land, right? So Congress has to speak. Tell me what exactly is in that act that you believe gave the federal government the authority to dispose of what was the public domain or federal property? Right. I think in the Emergency Relief Appropriations Act in 1935 and 1936, that they did have... gave them authority to improve, develop, grant, sell, or lease not only the property that they so acquired, but also any interest in property. Interest in the acquired property? It just said an interest therein. I guess they could arguably say that was only in what was acquired. But the Bankhead-Jones Farm Tenant Act I think further also allowed them to acquire property and subject to any type of reservations, which we're not claiming this is a reservation, but it also outlined outstanding estates, interests, which would be a royalty as an interest, an interest in property, easements or other encumbrances in which the secretary at the time determined wouldn't interfere with the utilization of the property for the purposes of the title. If the answer were, and I understand your position is not this, but if the answer were that there was no congressional authority granted to the secretary to dispose of this federal public domain minerals, does that answer the question? I mean, is then McKenzie kind of like, yeah, we never had them? I don't know if it answers the question completely. I mean, only because I think we still stand by the position that this should have been raised in the prior litigation, but they never did. Like putting aside sort of those kind of preclusions as to the argument, just as a legal matter, do you think that if it was understood that there was no authority for the federal government to grant this in the, you know, the deal is a deal is what the district court was saying, that that would have never could have been part of the deal. Is that dispositive to you? I mean, again, I understand you disagree with the premise. Right. It may be dispositive. I wouldn't want to say it is dispositive only because I disagree with the premise and it's, you know, and the failure of the government to appeal the prior decision and to try to raise the same arguments over and over again. Would you agree that if, in fact, it was understood that the federal government owned this all along, there wouldn't be any reason to appeal, right? If the understanding was that, well, this just doesn't include public domain. I guess that's sort of, I think the failure to appeal is kind of part of this conversation, and whether or not you think it was within the government's authority to do. Right. I do think it was part of conversation, but I don't know what the government thought when the other decision came about. Right. It isn't what we want to know. Yeah, it was an old decision, and I can't opine as to why they decided not to appeal it. You know, I think it was also something they brought on a North Dakota Supreme Court case decision, you know, 20, 30 years after that decision already happened. So they took a lot of delay in deciding, you know, to try to avoid that royalty interest in its entirety. So I'm not sure in the end why they chose not to appeal or the extent of which they thought that decision applied. But what we argue and what we believe is that it applied to all the tracts listed in the condemnation judgment. Do you, it seems that the record does show or at least indicates that the BLM has never been giving McKenzie County royalties for what is now identified as public domain minerals. Is that your understanding of the record? That is my understanding of the record. I would also say, though, the record has nothing in there indicating, although I do know that certain tracts at one point had producing oil and gas on them, but it's not necessarily that any, not all of them would have necessarily vested in the ability to receive that royalty. Right? Because there wasn't actually any production occurring. So the county's right and their interest doesn't actually invest until there's actually some type of development and production. So your response to counsel's statement that the 1991 judgment did not include this federal, whatever she, federal minerals. Your response is that the, that judgment, referring back to the complaint that gave rise to it, that it covered not only the tracts that are described in Exhibit A, but also the lands that are, were covered by these 1937 condemnation proceedings that are described in several paragraphs of the complaint. That is correct, Your Honor. Yes. And I think to add to that, I think the government realized that. Because after that decision and through the discussions after the decision, they were going through their own records to figure out what other tracts of land, and the county found other tracts of land that should have also been paying royalties and they hadn't been, or weren't listed specifically in that enclosure one that they had missed, but notifying that, oh, yes, they should have been receiving royalties on these tracts as well. And so I think that they understood it to also cover the other tracts listed in the condemnation judgment. And the only. All that in the record, that, the point you just made, that certain tracts beyond the ones that are in that, that attachment later got included. Yes, it is. And I'm sorry, Your Honor, I can't think of the exact pinpoint. That's okay. Okay. And with my last two minutes then, too, I would just like to address the statute of limitations argument real quick. And in case this court determines that that 1991 decision does not apply to the tracts that we're discussing right now and that are at issue, I would raise that the statute of limitation has not been triggered. Real quickly, before you get into, I hate to do this to you and get you off track, but could you, is it the county's position that you could enforce the 1930s condemnation judgments directly? Or do you need to be relying on the 1991 judgment to win? I think we could also enforce the 1930s judgments as well. I know there's some case law that involves quite a lot of lawsuits that were interpreting some judgments or are looking at judgments in particular, although I don't, I can't completely recall as to the extent of the factual underpinnings of some of those cases. But I think the issue in here and with the condemnation judgments is the fact that those 1930s judgments were very clear. They said all of these tracts here and described above or all of these tracts above in varying different language, similar in tone, are subject to the six and a quarter percent royalty. As the district court noted, if they wanted to exclude tracts, there was clear ways to do so. And they did. And in certain of the condemnation judgments, there are tracts that are specifically excluded and pulled out as not being subject to that six and a quarter percent royalty. There is also one specific judgment that applied, was only involved three tracts of land, and one of the tracts was the only one subject to the six and a quarter percent royalty and specifically spelled out, and that tract was the one containing the public domain minerals or the federal minerals as we're discussing. So the tract that is specifically at issue and that condemnation judgment specifically stated it was subject to that royalty. So there are, I think we can enforce the condemnation judgments as well because they are very clear. There is no ambiguity in those judgments. I'm close on my time. And so I would just respectfully direct the court to our briefing on the statute of limitations issues. Thank you very much. Thank you, counsel. All right. Counsel, you may respond. So I'd like to briefly address, go back to McKenzie 2 that we're talking about. I think counsel has effectively conceded there's at least a difference of interpretation and there's some ambiguity. I think the Quiet Title Act by its terms, its plain language, says you have to then go under the Quiet Title Act because it does not talk about where the dispute arises. Does it arise out of a dispute of a condemnation action or of a prior judgment? If there's a dispute, you need to follow the Quiet Title Act, including its statute of limitations. I think, you know, the Supreme Court's decisions in Block, Motaz, reinforced that. And, I mean, this court has said on multiple occasions, the United States' claim does not have to be meritorious. I think it is, but it doesn't have to be. The Quiet Title Act still applies, Spirit Lake, Wrigley, the Tenth Circuit, Justice Gorsuch, and the George opinion. I'd refer the court to those. Quickly on the merits of the McKenzie opinion or, excuse me, complaint, I would just note that there's other indicia in that complaint that nobody thought federal minerals were at issue. Property the federal government has always owned and was not taking. Do you agree that the reference to these condemnation proceedings in the various, in the paragraphs of the complaint, that those together do cover the legal descriptions of the federal minerals? Well, I think the condemnation proceedings are referenced. I mean, they are relevant. The condemnation proceedings took a lot of property, and they are relevant to the property that's put at issue. All I'm asking is the legal descriptions that are involved in those proceedings, that that encompasses what you've referred to as the federal minerals, the legal description of those mineral tracts. The parcel description includes, but I don't concede that they're at issue. But your Venn diagram, they wouldn't be included. But now it appears that they could be, because if you look at those federal, at those condemnation proceedings and the tracts, the parcels that were involved, that they would include the federal minerals, or at least the legal description. So my, what I was trying to articulate before was the McKenzie 2 case, where they defined what was at issue, the subject lands that are in dispute. Yeah. That that was only, and they referenced. I'm not really asking that complex a question. I'm just talking about legal descriptions. Well, the tracts at issue in the condemnation judgments, some include minerals that the county had always owned, and some include public domain minerals. We agree with that. We disagree with their interpretation of those judgments and what was put at issue in McKenzie 2. So may I just conclude the point? Go ahead. Take a minute. I guess I would just. I interrupted you. I'm sorry. No, of course. Appendix 137, 138, it talks about, you know, since its inception, the federal interest in the subject lands has always been burdened by the county royalty. This is patently not true for federal domain minerals. When they seek relief in the case, their request for relief is to quiet title in the name of McKenzie County to the royalty under the subject lands. Again, this is only the ones that they had the title to previously. There's other references. What about the, I hate to interrupt you, but what about the, I'm going to do it anyway, is condemnation judgments? You know, could they enforce it based on those alone? Or are those, why are those insufficient to create, to give the royalty rights to McKenzie County? Well, those judgments did not involve federal property. So the judgments are just the wrapping up, you know, agreeing to compensation for what was taken. What did the taking was the declaration of taking. And it took all of the county's interest. I'd refer the court. There's a lot of talk about could it have been clearer, maybe. The Supreme Court in 1924 in the Duckett case said, when an eminent domain is at issue, the government is taking all the res, and so you don't have to specify the interests. The government was taking lots of property and trying to address the Dust Bowl and other situations. It didn't itemize exactly what the county owned and what it didn't, because Duckett said it didn't have to. And so I think it was understood, though, at the time, the federal government's been very consistent in its understanding that all it was doing was taking the county's interest. It wasn't putting federal domain minerals at issue. And do you think that there was any congressional authority for that? I mean, is that something you haven't raised here in the oral argument? No, but I think our brief is clear. We do not believe any of those statutes gave federal officials the authority. And would there have been any other way for the Secretary to have given or sort of bartered that in the deal as been described, other than through a congressional act? I don't believe so, in part because Congress had already said how it wanted federal public domain minerals to be addressed. It had passed the Mineral Leasing Act before these condemnations were done. And so Congress gets to decide how we dispose of federal property. They are the ones that authorize the eminent domain proceedings, but they had already said how federal public domain minerals were to be addressed. And it was not through exchanges, you know, in these proceedings. Counsel, if you had been representing the government in that 1991 proceeding that ended up with this judgment, would you have recommended that the government appeal because the judgment was granting or recognizing rights in minerals that was a legal impossibility? Well, I don't think so. I think the counsel at the time reasonably understood that judgment to be essentially reversing things back to the status quo before the BLM decision. And all the BLM decision did was address minerals that the county had the tax title to. And so while I think the reasoning of that McKenzie 2 is wrong, you will find no other court that has found that an eminent domain proceeding conveys away federal property through sort of maybe arguably ambiguous language. It is, I think, wrong as a legal matter. It was not provided for in the Declaration of Taking Act, et cetera. But when considering whether to appeal something, the federal government will say, well, what's the practical consequence? Is this worth the court's time? Is this worth our time? And if it was reasonably understood, which I absolutely think it was, that this only returned things to the status quo before that 1985 BLM decision, I don't think it was unreasonable to not appeal. I think if it was, oh, we can reopen all eminent domain proceedings to find divestment of federal property, I think we may have felt that that was a very different case and more compelling federal interests. All right. Thank you. Thank you. I appreciate it. All right. Counsel. It's a very interesting case. Thank you for your arguments, which have been very helpful. The case is submitted, and we will render a decision as soon as possible. Ms. Andeside.